UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| G.M. SIGN, INC., an Illinois corporation, individually and as the representative of a class of similarly situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 06 C 949 |
| FRANKLIN BANK, S.S.B., | ) ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Plaintiff G.M. Sign, Inc. ("GM Sign") to certify a class of plaintiffs in its suit against Defendant Franklin Bank, SSB. For the reasons set forth below, the motion is granted subject to modifications in the class definition set forth herein. Franklin Bank's motion to dismiss the individual claims of GM Sign is denied.

## BACKGROUND

In 2005, Franklin Bank contracted with ActiveCore, a Canadian faxing company, to fax form advertisements to businesses in Illinois, Ohio, West Virginia, Maryland, Georgia, Virginia, North Carolina, South Carolina, Kentucky, Florida, and Colorado. GM Sign is an Illinois business that received one of the fax advertisements sent by

ActiveCore on behalf of Franklin Bank on March 29, 2005. The message was a single page and contained both text and images advertising mortgage refinancing and debt consolidation loan programs.

This is the fourth time GM Sign has sought to certify a class of plaintiffs in this case. Familiarity with our rulings on the previous three motions to certify is assumed.

The ruling on the third motion for certification was issued by mail a day before the previously set in-court ruling date; the accompanying order stated that the parties were still to come to court the following day for a status hearing. When GM Sign did not appear, Franklin Bank requested dismissal of the case for want of prosecution, which was granted. Later that day, Franklin Bank informed GM Sign by letter of the disposition and tendered a check for $1500 (the largest damage amount possible under the statute for an individual claim exclusive of additional items such as interest and taxable costs) to GM Sign. The following day, GM Sign moved to vacate the dismissal. A week after that motion was granted, GM Sign filed the instant motion for certification of a class of "[a]ll persons who received a fax between December 2004 and June 2005 that advertised mortgage refinancing or debt consolidation loan programs and that instructed the recipient to "Call the experts for a free analysis" at "1-877-907-SAVE" or "1-877-489-8777" or "1-410-349-4220" and who had not previously consented to

receiving such advertisements." Franklin Bank timely filed their brief opposing class certification.

More than three weeks after filing their opposition brief, Franklin Bank moved to dismiss GM Sign's individual claim pursuant to Fed. R. Civ. P. 12(b)(1) on the basis that the claim was mooted by the tendering of the check once the case was dismissed.

**LEGAL STANDARD**

**I. Motion to Dismiss for Lack of Jurisdiction**

Rule 12(b)(1) provides for dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon the federal court. *See In re Chicago, Rock Island & Pac. R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). A court has jurisdiction only over live cases or controversies; a dispute once mooted does not provide a jurisdictional basis. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 626 (7th Cir. 2007).

**II. Motion for Class Certification**

To be certified as a class action, a claim must first satisfy four criteria: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). The first two focus on the characteristics of the class as a whole: the number of potential class members must be so large that joinder would be impracticable, and legal or factual questions presented in the putative class action must be common to all class members. Fed. R. Civ. P. 23(a)(1), (a)(2). The third and fourth concentrate on the attributes of the

parties seeking to represent the class: the claims or defenses of those representatives must be of the same type as those of the class they seek to represent, and the representatives must be able to protect the interests of the class fairly and adequately. Fed. R. Civ. P. 23(a)(3), (a)(4).

If an action shows each of these four attributes, the inquiry shifts to examine whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231, 2245 (1997). Rule 23(b)(3) specifies that a class can be certified if the common factual or legal questions identified for purposes of Rule 23(a)(2) predominate over issues that pertain only to individual class members and if adjudicating the controversy as a class action would be superior to other possible methods. The party who seeks class certification bears the burden of showing that the Rule 23 requirements are satisfied. *Amchem*, 521 U.S. at 614, 117 S. Ct. at 2245. Moreover, the class must be identifiable as a class. *Oshana v. Coca-Cola, Inc.*, 472 F.3d 506, 513 (7th Cir. 2006).

With these principles in mind, we turn to the instant motions.

## DISCUSSION

### A. Motion to Dismiss for Lack of Jurisdiction

Before examining the question of class certification, we briefly address Franklin Bank's contention that GM Sign's individual claims were mooted by the tender of the

$1500 check during the approximately 24-hour period between the dismissal of the case and the filing of the motion to vacate the dismissal. Given the circumstances surrounding the offer of the check, it is difficult to believe the representation in Franklin Bank's motion to dismiss that the offer was made "[i]n an effort to end unnecessary litigation." Rather, the facts surrounding the offer, detailed above, indicate that the action was an attempt to buy off the named plaintiff and hamstring a potentially viable class action rather than a legitimate offer of complete relief to a party advancing only individual claims. Such a tactic does not moot a named plaintiff's claim and does not eliminate our jurisdictional basis. *Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999). The motion to dismiss GM Sign's individual claim for lack of jurisdiction is correspondingly denied.

## II. Motion for Class Certification

*A. Rule 23(a) Factors*

    1. Numerosity

To satisfy the numerosity requirement, the number of putative class members must be sufficiently large to make joinder of all members impracticable. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). In support of its assertion that the class is that numerous, GM Sign posits that the potential class size exceeds 100,000, based upon figures contained in two categories of documents: correspondence (including invoices)

pertaining to transmissions sent from ActiveCore between December 2004 and June 2005 and three fax transmission logs from February 23, 2005, and March 29, 2005,[1] showing names and fax numbers of businesses to which faxes were sent on those two dates.

The first category of documentation does not supply any information that could be used to identify fax recipients. Since discovery has closed, the ability to gain specific identification information about these 95,000 potential class members has terminated.

With regard to the second category, the logs provide phone numbers and names of the intended recipients of faxes sent on those three occasions. Though the logs do not definitively establish the identities of the recipients without further investigation on the part of class counsel, they provide enough information to enable counsel to locate them without the necessity for further participation from Franklin Bank. Some of these parties may not be able to be found, but the likelihood is high that a large portion of the 8000-plus recipients will be locatable. Joining thousands of individual plaintiffs from two different states would make orderly progression of judicial proceedings exceedingly difficult to achieve, whether in the form of motion practice or hearings. Accordingly, a class consisting of the recipients identified in Exhibits L, M, and N to GM Sign's

---

[1] Two faxing sessions occurred on March 29.

motion for certification (faxes sent on February 23 to West Virginia phone numbers and on March 29 to Illinois phone numbers) is sufficiently numerous to render joinder impracticable, thus satisfying Fed. R. Civ. P. 23(a)(1).

    2. Commonality

Where injuries alleged by a class are the result of a standardized course of conduct by a defendant, the class members' claims will usually present at least some common facts and common legal questions. *See Keele*, 149 F.3d at 594. In this case, the contention is that Franklin Bank engaged in a standardized course of conduct by sending the subject advertisement to the recipients of the February 23 and March 29 fax transmissions. Several common questions of law and fact are raised by the events described in the parties' submissions, including whether ActiveCore distributed fax advertisements only to recipients who had consented to their transmission; if they did not obtain consent, whether the consequences of their failure to do so can be visited on Franklin Bank; and whether the inclusion of removal numbers is sufficient to absolve a fax transmitter of liability under the Telephone Consumer Protection Act ("TCPA"). 47 U.S.C. § 227. Thus, the commonality requirement of Fed. R. Civ. P. 23(a)(2) is met here.

    3. Typicality

The typicality requirement of Fed. R. Civ. P. 23(a) is satisfied if the same course of conduct that produced the named plaintiff's claim produced the claims of the class

and the same legal theory is advanced as to both. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). This factor connects the two factors of commonality and adequacy of representation by ensuring that the claims litigated by the class representative will involve the same factual and legal arguments that pertain to the class as a whole and that the resolution of the representative's claims will in turn address the claims of the group. *Id.*; *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997).

Here, GM Sign is a party identified in the fax logs as a recipient of the advertisement at issue. Since the course of conduct that produced GM Sign's claim also produced the claims of the class, and GM Sign advances the same TCPA claim that will be brought by the class, GM Sign's claim is typical of those of the class.

### 4. Adequacy

The final subsection of Fed. R. Civ. P. 23(a) requires that the class representative "fairly and adequately protect the interests of the class." This requirement has been interpreted to consist of two components: adequacy of the named plaintiff to represent and thereby to protect the interests of absent class members and adequacy of class counsel. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). On the first component, a class representative must have the same interests and have incurred the same legal injury as the class members. *Uhl v. Thoroughbred*

*Technology and Telecommunications, Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). This ensures consistency in the positions taken or arguments advanced by the class representative and the class as a whole. *Id.* As Franklin Bank points out, there were some initial indications that GM Sign was prepared to compromise certain interests of the class to further its individual interests before the forum for adjudication of this matter was finalized. However, those issues are no longer extant and GM Sign has diligently pursued the litigation in all other respects for more than two years. Accordingly, we find that GM Sign is an adequate representative for the class.

On the issue of adequacy of counsel, Fed. R. Civ. P. 23(g) lays out four factors that a court must consider when determining whether counsel can adequately represent the class and therefore should be appointed to serve as class counsel. As applied to this case, these factors are the work that counsel has done with respect to the potential class claims, experience in handling class actions, counsel's knowledge of the TCPA, and the resources that counsel will devote to the representation of the class.

Over the two and a half years that this case has been pending, counsel has done a significant amount of work, including extensive discovery proceedings and active motion practice. There is no indication that they will allow the case to languish or that they will be lax in their continued prosecution of this action. Counsel have represented classes in numerous actions in both state and federal courts. Exs. T, U to Mot. for Class Cert. Several of their cases have resulted in favorable outcomes for the classes counsel

has represented. In addition, some of these cases have involved TCPA claims, and counsel's submissions to date demonstrate knowledge of the operation of this area of law. Last but not least, counsel has expressly committed to devote adequate human and financial resources to properly represent their class clients. Consequently, we find that GM Sign and current counsel will adequately protect the class's interests.

*C. Ascertainability*

Although Rule 23 does not explicitly contain the requirement that has come to be known as ascertainability, Seventh Circuit case law clearly calls for it to be present in any certified class. *Oshana*, 472 F.3d at 513. To be ascertainable, a class must be identifiable as a class and membership within it must be determined by application of precise, objective criteria. *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987).

Franklin Bank raises two specific objections that pertain to the ascertainability of the class. First, it contends that the fax logs identifying the 8000-plus recipients of ActiveCore's transmissions cannot be used to establish a group whose claims are susceptible of class treatment because they do not definitively establish the real party in interest for the TCPA claim. Franklin Bank's point about the potential vagueness of the word "receive" in the class definition is well-taken.

The parties also discuss the question of whether a fax recipient whose fax came through on a device other than a telephone facsimile machine would have an actionable

claim under the TCPA and therefore be eligible for inclusion in the proposed class. The authorities on this issue are mixed. Some contend that faxes received on devices other than dedicated fax machines are actionable. *See, e.g.*, *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, at ¶ 200 (2003). Others have concluded that canons of construction of statutory language mandate that "telephone facsimile machine" and "computer" be treated as separate and distinct under the TCPA. *See, e.g.*, *Aronson v. Bright-Teeth Now, LLC*, 824 A.2d 320, 322 (Pa. Super. Ct. 2004). Though *Aronson* pertained specifically to unsolicited email messages rather than unsolicited faxes, the reasoning employed in that case is expansive enough to permit a like argument with respect to the application of the TCPA to unsolicited faxes received on computers. The parties' treatment of the issue at this stage is insufficient to permit us to engage in a full-blown exercise of statutory construction with regard to the scope of the TCPA. Accordingly, we will restrict the definition of the class at issue here to persons or entities who received the fax on a telephone facsimile machine. Though other claims may be actionable under the statute, such a limitation prevents the class members from having divergent interests on the issue of the proper scope of the statutory language.

A class restricted to persons or entities who (1) received, on a telephone facsimile machine, a fax transmitted on February 23 or March 29, 2005, that advertised mortgage

refinancing or debt consolidation loan programs and that instructed the recipient to "Call the experts for a free analysis" at "1-877-907-SAVE" or "1-877-489-8777" or "1-410-349-4220," (2) owned and/or paid for some portion of the operation of the machine on which the fax was received, and (3) had not previously consented to receiving such advertisements addresses both of these deficiencies. It provides precise, objective criteria that would be within the personal knowledge of the potential class member. Thus, it describes an identifiable class of persons that can be ascertained by reference to its contents.

*C. Predominance and Superiority under Rule 23(b)(3)*

As the attributes of Rule 23(a) and ascertainability are present in this case, we shift our focus to a determination whether the proposed action can be maintained under one of the subsections of Rule 23(b). *Amchem*, 521 U.S. at 614, 117 S. Ct. at 2245. GM Sign asserts that this case fits within the Rule 23(b)(3) mold, wherein a case can be maintained as a class action if common questions predominate over those specific to individual class members and class treatment is a superior method of adjudication. The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Though the predominance factor is undoubtedly related to the commonality called for in Rule 23(a)(2), the predominance factor of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem*, 521 U.S. at 623-24, 117 S. Ct. at 2231, 2249-50. While

commonality looks to whether class members share factual or legal issues, the predominance inquiry examines whether the shared attributes will be a main focus of the litigation. *See id.*

As GM Sign points out, the claims at issue in this case arise from a uniform type of alleged violation of a single statute. Though some of the issues Franklin Bank identifies have the potential to require individual resolution, there can be no question that the common issues identified above will be a main focus of this case going forward.

Moreover, the obstacles Franklin Bank perceives to predominance and superiority are largely illusory. One example is the contention that an individualized inquiry is required to ascertain membership in the class because every class member would have to adduce evidence that prior consent was not given. Such evidence would be within the knowledge of the potential class member, and a party would need a good-faith basis to believe that he or she satisfies the class definition before making a representation to this court to that effect.

Franklin Bank also argues that the new definition still requires them to mount a defense before a prima facie case of liability is established. Furthermore, says Franklin Bank, potential plaintiffs would have no way of knowing what evidence Franklin Bank could bring to bear on the issue of prior consent. That is certainly true, but the absence of a defense is no longer a part of the class definition, so defenses that may be available during the merits phase do not come into play with regard to the issue of certification.

In short, there is no need for a case-by-case analysis at the point that putative class members enter the case. Common questions will be a main focus, making class treatment with its attendant consistency and efficiency a superior method of resolving this controversy. As a result, all of the requirements of Rule 23 are satisfied, and class certification is now appropriate.

*D. Notice to Class Members*

Since we are certifying a plaintiff class in this case, notice to potential members of that class becomes the next topic to be addressed. Though no proposed notice or definitive plan of dissemination has been presented, GM Sign has expressed a desire to distribute notice via fax. This suggestion is not acceptable. The purpose behind the TCPA is to reduce the amount of unsolicited faxes that are sent. Though legal documents are not advertisements and thus not strictly within the scope of the TCPA, even the Federal Rules of Civil Procedure do not permit fax service of legal documents without prior consent of the party receiving them. Fed. R. Civ. P. 5(b)(2)(E). Class counsel has represented that sufficient staff and money will be devoted to the prosecution of this case such that the interests of the class members will be protected. Those resources can be directed at discerning the identities and current contact information for the persons or entities referenced in the February and March 2005 fax logs to permit class notice to be distributed to them by means other than faxing.

## CONCLUSION

Based on the foregoing analysis, the motion to dismiss the individual claims of GM Sign [166] is denied. Ths motion to certify this case for class treatment [156] is granted. The class of plaintiffs is defined as persons or entities who (1) received, on a telephone facsimile machine, a fax transmitted on February 23 or March 29, 2005, that advertised mortgage refinancing or debt consolidation loan programs and that instructed the recipient to "Call the experts for a free analysis" at "1-877-907-SAVE" or "1-877-489-8777" or "1-410-349-4220," (2) owned and/or paid for some portion of the operation of the machine on which the fax was received, and (3) had not previously consented to receiving such advertisements. The claims of the class are those set forth in Count I of the First Amended Complaint [42] in this action. The law firms of Anderson & Wanca and Bock & Hatch, LLC are appointed as class counsel pursuant to Fed. R. Civ. P. 23(g).

/s/ Charles P. Kocoras

Charles P. Kocoras
United States District Judge

Dated:   August 20, 2008